UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

WILLIAM RODRIGUEZ MALDONADO
and JENNIFER ANN RODRIGUEZ,            Case No. 19-12335-ta13

    Debtors.

## OPINION

Before the Court is the second fee application of debtors' counsel, seeking allowance of $5,165[1] in professional fees, $60 in costs, and New Mexico gross receipts tax for post-confirmation work. The Court previously awarded Counsel $10,742 in fees, costs, and tax for work done through plan confirmation. Because the total fees sought are significantly higher than the average fee for a chapter 13 case in this district at this stage of the case, the Court thought it necessary to review both fee applications and compare the fees charged to the results achieved. Having done so, the Court finds that no more than $9,591 in fees should be allowed for all work done in this case to date. The Court therefore will allow only $74 in fees, $60 in costs, and applicable gross receipts tax for the second fee application.

A.     Facts.

The Court finds:[2, 3]

      In August of 2019, debtors retained New Mexico Financial and Family Law, P.C. ("Counsel") to file this case. Debtors gave Counsel a $3,000 retainer. Attorneys Don Harris and

---

[1] All monetary figures are rounded to the nearest dollar.
[2] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[3] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

Dennis Banning and paralegal Jill Stevenson worked on the case. Counsel filed the case on October 11, 2019. The initial filings included the petition, disposable income calculation, schedules, statement of financial affairs, plan, credit counseling certificate, and disclosure of compensation (the "Disclosure"). The Disclosure states:

> For legal services, I have agreed to accept $3,000. Prior to the filing of this statement I have received $3,000.

The chapter 13 plan, on the other hand, states:

> Prepetition, Debtor's attorney was paid $3,000. Attorney estimates that additional, unpaid fees, costs, and taxes through confirmation will be about $3,000.

This language was unchanged in debtors' amended plan, filed January 16, 2020.

This is a relatively simple chapter 13 case. Debtors, who are above median income, do not own a house. All of their personal property is exempt or fully encumbered. Their student loans are nondischargeable. Debtors own two cars, both encumbered with loans that can be bifurcated. They have three priority tax claims to pay.[4]

Debtors filed a chapter 13 plan on the petition date. It drew objections from the trustee[5] and New Mexico Taxation and Revenue Department. In partial response to the objections, Debtors filed an amended schedule J, an amended "means test," and the amended plan. The amended plan addressed three of the trustee's objection but inexplicably ignored the other two.

---

[4] The amended plan's estimate of the priority tax claims is not very close to the filed claims: Illinois tax claim: ($662 estimated/$448 filed); NMTRD:$2,505 estimated/$1,774 filed) and IRS: $2,505 estimated/$5,546 filed). This is sloppy, given that all of the tax claims had been filed when Counsel filed the amended plan. Presumably, the trustee is paying the tax claims as filed, not as estimated.

[5] The trustee raised five objections: Debtors are above-median in income and therefore must give their tax refunds to the estate; part 5.1 of the plan is not consistent with the "best interests of creditors" calculation; the proposed plan payments are insufficient to pay the claims; Debtors must provide evidence to support a $340 per month education expense; and the plan must provide for payment of New Mexico Workforce Solutions' secured claim.

The trustee objected to the amended plan, reiterating the two objections that had not been addressed in the amended plan, i.e., the failure to turn over tax refunds and to provide for New Mexico Workforce Solutions' secured claim. The Court confirmed debtors' amended plan on March 5, 2020. The confirmation order further amended the plan to address the trustee's objections.

Counsel filed a fee application on July 25, 2023, seeking approval of $10,742 in fees, costs, and tax. The requested fees were about twice the average fee charged through confirmation in this district, about 66% more than counsel's estimate from the Plan, and 333% more than the flat fee agreement in the Disclosure. No objections to the fee application were filed, and the Court allowed the fees on an interim basis.

Between plan confirmation and July 16, 2023 (the second application period), only one material event occurred in Debtors' financial life: Mr. Maldonado got a raise. The trustee learned of the raise when she reviewed Debtors' 2020 income tax return. In July 2021 she filed a motion to compel Debtors to amend their schedules I and J. Counsel objected to the motion but ultimately agreed to a stipulated order granting it.

Debtors filed amended schedules I and J on October 13, 2021. The amended schedules prompted the Trustee to seek to modify the plan to increase plan payments from $1,025 per month to $1,619 per month (the net income shown on Debtors' amended schedule J). Debtors agreed to an order modifying the plan as requested.

In the second fee application, Counsel billed Debtors $5,165. To decide what fees should be allowed in the second application, the Court will review the fees charged and work done during both application periods, i.e., from the petition date through July 16, 2023. The combined

hours spent and fees billed during the first and second application periods can be categorized as follows:

| Category | Attorney time | Paralegal time | Combined fees |
|---|---|---|---|
| Clerical work | 2.7 | | $ 608 |
| Fee applications | 2.5 | 1.6 | $ 978 |
| 2019 tax refund | 3.7 | | $ 832 |
| Reviewing proofs of claim | 7.4 | | $ 1,665 |
| NM Tax & Rev objection | 3.2 | | $ 720 |
| Ch 13 Trustee objection | 3.7 | | $ 833 |
| Creditor objections | 1.4 | | $ 315 |
| Drafting/redraft conf. order | 2.8 | | $ 630 |
| Preparing for & attending hearings | 6.7 | | $ 1,662 |
| Plan amendment | 1.8 | | $ 405 |
| Trustee motion to compel | 1.3 | | $ 293 |
| First amended I and J | 2.7 | 1.2 | $ 787 |
| Second amended I and J | 1.7 | | $ 382 |
| Trustee's plan amendment | 1.1 | | $ 247 |
| Plan payment delinquency | 2.1 | | $ 472 |
| Case administration | 2.4 | 7.8 | $ 1,738 |
| Miscellaneous | 9.2 | 0.2 | $ 2,115 |
| Total | 56.4 hrs. | 10.8 hrs. | $ 14,682 |

B. <u>General Requirements for Debtor Attorney Fee Allowance in Chapter 13</u>.

Compensation of debtor's counsel in chapter 13 is governed by § 330(a)(4)(B):[6]

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

Section 330(a)(4)(B) was added to the bankruptcy code by the Bankruptcy Reform Act of 1994.[7]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) [disclosure of] compensation paid or agreed to be paid pursuant to

---

[6] This is true for work done pre- or post-confirmation. *See*, *e.g.*, *In re Conner*, 559 B.R. 526, 533 (Bankr. D.N.M. 2016) (awarding supplemental fees pursuant to § 330(a)).

[7] The Reform Act also deleted the language "or to the debtor's attorney" from § 330(a)(1). Until then, § 330(a)(1) had included the debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. U.S. Trustee*, 540 U.S. 526, 541 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 case could only be compensated under § 330(a)(4)(B).

section 329 and 2) . . . approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales,* 621 B.R. 903, 922 (Bankr. D. Kan. 2020), quoting *In re Gorski,* 519 B.R. 67, 71 (Bankr. S.D.N.Y. 2014).

Compensation generally can include reimbursement of expenses advanced, e.g., filing fees, credit counseling fees, and credit report fees. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir. 2019); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) (§ 330(a)(4)(B) permits an award of fees and expenses).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Cooke,* 2020 WL 6821730, at *3 (Bankr. D. Ariz.), citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995). "This burden is not to be taken lightly given that every dollar expended on legal fees results i[n] a dollar less that is available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (same); *In re Hotel Assoc., Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981) (same).

Approval and payment of interim fee applications is subject to review by the Court until the case has come to its resolution.

> Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation." *In re Heritage Real Est. Inv., Inc.*, No. 14-03603-NPO, 2021 WL 1396570, at *12 (Bankr. S.D. Miss. Mar. 12, 2021) (quoting *Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Refin. Co.)*, 890 F.2d 1312, 1322 (5th Cir. 1989))).

*In re S-Tek 1, LLC*, 2023 WL 1787893, at *2 (Bankr. D.N.M.); *see also In re Union Home & Indus., Inc.*, 376 B.R. 298, 301–02 (10th Cir. BAP 2007) (interim fee awards are interlocutory).

> The statute anticipates repeated application to the court for reimbursement and compensation, subjecting the award to amendment or modification at any time during the pendency of the bankruptcy proceedings. Interim awards of compensation, which are within the court's discretion, *In re Solar Manufacturing Corp.*, 190 F.2d 273 (3d Cir.), *cert. denied sub nom. McGirl v. Mintz*, 342 U.S. 893, 72 S. Ct. 200, 96 L. Ed. 669 (1951), are to be considered by the court in making a final award. *Massachusetts Mutual Life Insurance Co. v. Brock*, 405 F.2d 429 (5th Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S. Ct. 1748, 23 L.Ed.2d 220 (1969). "Interim allowances are always subject to the court's re-examination and adjustment during the course of the case, and all expenses of administration must receive the court's final scrutiny and approval." 2 Collier on Bankruptcy P 331.03 (15th ed. 1981). Interim awards, too, are refundable to the estate in cases of misconduct. *In re Arlan's Department Stores, Inc.*, 462 F. Supp. 1255 (S.D.N.Y.1978), aff'd, 615 F.2d 925 (2d Cir. 1979). Interim awards, then, are in no respect final adjudications on the question of compensation. Such awards are therefore interlocutory.

*In re Callister,* 673 F.2d 305, 306-07 (10th Cir.1982).

C.  <u>Determining How Much Compensation Should be Allowed</u>.

"To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (to the same effect); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (discussing the "reasonableness" requirement).

1. <u>Actual Services</u>. Compensation can only be allowed for services actually performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). There is no issue in this case about whether the fees charged were for work that was actually performed.

2. <u>Necessary Services</u>. Allowance is limited to "services [that] were necessary to the administration of, or beneficial … toward the completion of a case." *In re Schupbach Investments, LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2014) (unpublished); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). In chapter 13 cases, the benefit can be to the debtor rather than to the estate. *See, e.g., In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (Section 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable). However, to be compensable, the representation of the debtor must be "in connection with the bankruptcy case." § 330(a)(4)(B).

Some of the work done by counsel during the first and second application periods was not necessary for the benefit of the estate or the Debtors. First, Counsel drafted amended schedules I and J, but never filed them. Second, Counsel spent an inordinate amount of time consulting with Debtors. Much of that time was unnecessary and did not benefit the estate or Debtors.

Third, clerical work is not compensable as a "necessary" service rendered by a professional person seeking allowance of fees under § 330(a). *See, e.g.*, *In re Guajardo*, 2020 WL 762828, at *4 (Bankr. D.N.M.) ("While necessary in every legal proceeding, clerical work cannot reasonably be passed onto clients or the estate and should instead be absorbed by the firm as overhead."); *In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991) (same). Counsel billed 2.7 hours at $225/hour trying to coordinate calls or meetings. "Time spent on these clerical tasks is not compensable. If Counsel's attorneys choose to do their own scheduling of client meetings, Zoom calls, and the like, they must not bill for it." *In re Sepulvida*,

2023 WL 6964111, at *5 (Bankr. D.N.M.); *In re Sepulvida*, 2021 WL 1961914, at *4 (Bankr. D.N.M.) (same); *In re DeKeyzer*, 2021 WL 1344715, at *4 (Bankr. D.N.M.) (same).

Fourth, work done to correct mistakes is not considered necessary. *See, e.g., In re Wheeler*, 439 B.R. 107, 110-11 (Bankr. E.D. Mich. 2010) (the time spent making the mistake is unnecessary and noncompensable or, in the alternative, the time spent correcting the mistake is unnecessary and noncompensable); *In re Redington*, 2018 WL 6444387, at *6 (Bankr. D.N.J.) (citing and following *Wheeler*); *In re Yogi*, 2014 WL 3749553, at *2 (Bankr. D. Haw.) ("when an attorney makes a mistake, the attorney should bear the cost of fixing it, not the client or the bankruptcy estate."); *In re Abernathy*, 2023 WL 5525042, at *4 (Bankr. D.N.M.) (work correcting mistakes is unnecessary). Counsel made missteps and caused work that reasonable precaution and foresight would have prevented. For example, the first plan had obvious omissions that required an amendment. Similarly, the amended plan had obvious omissions that required further amendment via the confirmation order. In addition, counsel ignored and/or opposed the Trustee's May 31, 2021 request for an updated Schedule I. This resulted in a Motion to Compel, filed July 1, 2021, requiring unnecessary work.

3. <u>Reasonable Compensation</u>. Finally, compensation for actual and necessary services must be reasonable. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

> (A) the time spent on such services;
> (B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

(1) The time and labor required;
(2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The "undesirability" of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

488 F.2d at 717-19. For the first and second fee applications, the Court weighs the § 330(a)(3) and *Johnson* factors as follows:

| Factor | Discussion |
|---|---|
| § 330(a)(3)(A): Time spent | Counsel spent significantly more time on this case than is typical for a chapter 13 case in this district. Thus far, counsel has billed about 63 hours. A typical case takes about 30-35 hours from start to finish. Several billing practices contributed to the high number of hours billed. For example, reviewing an email is generally billed at .2 hours, while reviewing a proof of claim is generally billed at .3 hours. In addition, an inordinate amount of time was spent dealing with the 2019 tax refund owed to the Trustee but spent by Debtors. The time billed illustrates the cumulative effect of consistently billing 0.2 and 0.3 hours for tasks that should have, and likely did, take much less time. Finally, Counsel billed 4.1 hours for drafting two fee applications. |
| § 330(a)(3)(B): Rates charged | Mr. Harris, Mr. Banning, and Ms. Stevenson are experienced professionals. They billed $295, $225, and $150 per hour, respectively. Their rates are reasonable. |
| §330(a)(3)(C): Necessary/beneficial | In part, the work performed was necessary and beneficial. As discussed above, however, some of the work was unnecessary. |
| § 330(a)(3)(D): Timeliness | The work was timely. |
| § 330(a)(3)(E): Skill/experience | Mr. Harris and Mr. Banning are experienced chapter 13 lawyers. Ms. Stevenson is an experienced bankruptcy paralegal. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases | The rates charged are comparable to the rates of similarly experienced attorneys for non-bankruptcy work. |
| *Johnson* factor ("JF") 1: Time and labor required? | Counsel should have been able to do the work required for this case much more efficiently. See the discussion below. |
| JF 2: Novelty and difficulty of the questions? | It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult. |
| JF 3: Skill requisite to perform the legal service properly? | Counsel's professionals have the requisite skills. |
| JF 4: Preclusion of other employment due to acceptance of the case? | There is no evidence that the debtors' bankruptcy case precluded counsel from other work. |
| JF 5: Customary fee? | In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000-$6,000 in attorney and paralegal fees, costs, and tax. Some post-confirmation work is needed in many cases (a plan modification, surrendering a vehicle, mortgage issues, tax issues, etc.), typically costing $1,000-$2,000. Counsel's fees in this case are much higher than average for cases at a similar stage of post-confirmation plan performance. |

| | |
|---|---|
| JF 6: Whether the fee is fixed or contingent? | The hourly rates charged by counsel were fixed. |
| JF 7: Time limitations imposed by the client or circumstances? | There were no significant time limitations in this case. |
| JF 8: Amount involved and results obtained? | In the first application period, counsel dealt with an objection by New Mexico Taxation and Revenue, obtaining information from the Illinois taxation department, an objection by Bridgecrest regarding valuation and interest rate for a car loan, an objection by the chapter 13 trustee, and payment of student loans. This is all fairly normal for a chapter 13 case and does not justify $9,517 in fees. For the second application period, counsel had to amend schedules I and J one time. A second amendment of schedules I and J was prepared for filing, but never filed. Counsel had to address a tax refund that Debtors spent instead of remitting the refund to the Trustee. Counsel had to review an amendment to the Plan submitted by the Trustee, doc. 64 filed November 15, 2021. Counsel did not object to the amendment. This summarizes the results obtained during the second application period. These results do not justify $5,165 in fees. |
| JF 9: Experience, reputation, and ability of the consultant? | Counsel's professionals are experienced in chapter 13 work. |
| JF 10: Undesirability of the case? | There is no indication that this case was undesirable. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |
| JF 12: Awards in similar cases? | As set out above, the attorney and paralegal fees charged for a "typical" chapter 13 case in this district are about $5,000-$6,000 for pre-confirmation work. Post-confirmation work typically is in the $1,000-$2,000 range. |

The time Counsel charged to this case to achieve the results obtained to date is not reasonable. Some of the fees billed are either for excessive time being spent or excessive time being billed for tasks. For example, in *In re Heise*, the Court found that one hour was a reasonable amount of time to prepare a fee application. 436 B.R. 143, 147 (Bankr. D.N.M. 2010). If counsel is keeping contemporaneous records and reviewing the monthly invoices, all that is left is compiling the invoices for a fee application. *Id.* Counsel appears to use a standard form for its fee applications. No extensive drafting is required. Counsel did supplement its first

fee application with an explanatory document, and .5 hours is a reasonable amount of time for drafting that document. For both fee applications, this results in reasonable billing of 2.5 hours. Counsel billed a total of 4.1 hours.

Second, Counsel charged 1.5 hours to attend a preliminary hearing on February 4, 2020. Even waiting 38 minutes (the hearing started at 9:38 am on a 9:00 a.m. trailing docket), this is excessive. The actual hearing was only a few minutes, and counsel had a hearing, of just a few minutes, immediately preceding the hearing for this case.

Third, Counsel's practice of billing .3 hours for reviewing proofs of claim resulted in an excessive charge for that work: 7.4 hours of attorney time and $1,665 billed.

Lastly, Counsel billed an average of more than .2 hours for reviewing and/or sending each email. This resulted in excessive charges (a total of $3,983) for email correspondence in a routine case.

4. <u>Fees Disallowed as Unnecessary or Unreasonable in Amount</u>.

Based on the above discussion, the Court finds that the following fees should be disallowed as unnecessary:

- $608 in fees billed for clerical work; and
- $1,080 in fees billed for other work that was corrective or duplicative.

Similarly, the Court finds that the § 330/*Johnson* factors weigh against the reasonableness of the total fees requested thus far in this case and that the following fees should be disallowed as unreasonable in amount:

- $445 in fees billed for fee applications;
- $168 in fees billed for attending a preliminary hearing;
- $833 in fees billed for proof of claim review; and
- $1,957 in fees billed for sending and reviewing emails.

This totals a $5,091 reduction in fees. All costs will be approved.

D.  Adequate Disclosure of the Fee Agreement.

Accurately disclosing its fee agreement is an essential duty of debtor's counsel.

> Because disclosure under § 329(a) and Rule 2016(b) is central to the integrity of the bankruptcy process, this Court has held that failure to disclose is sanctionable. *In re Andreas,* 373 B.R. 864, 872–73 (Bankr. N.D. Ill. 2007).

*In re Kowalski*, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009).

> Failure to disclose (in this case, fully and accurately disclose) is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid. *See In re Prod. Assocs., Ltd.,* 264 B.R. 180, 186, 189 (Bankr. N.D. Ill. 2001). The extent to which compensation should be denied rests with the Court's sound discretion. *See Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 882 (9th Cir. 1995).

*Kowalski* at 848.

> Clearly, failure to comply with the Bankruptcy Rules may justify a bankruptcy court's denial of attorney fees. *Anderson,* 936 F.2d at 204; *In re Maui 14K, Ltd.,* 133 B.R. 657, 661 (Bankr. D. Haw. 1991); *In re Crimson Inv., N.V.,* 109 B.R. 397, 401 (Bankr. D. Ariz. 1989).

*In re Vann*, 986 F.2d 1431, at *2 (10th Cir. 1993).

In the Disclosure, counsel represented that Debtors paid a $3,000 flat fee for legal services in connection with the case. Clearly, that representation was inaccurate. Counsel should file an amended Disclosure as soon as practicable.

Furthermore, on January 16, 2020, Counsel estimated its fees through confirmation to be $6,000. When that estimate was made (in the amended plan), Counsel had already accrued more than $9,000 in fees, costs, and tax!

Counsel's first fee application requested interim approval of $10,742 in fees, costs, and tax, $4,742 higher than estimated in debtors' amended plan. Underestimating attorney fees by that much can have adverse effects on a debtor's ability to pay all claims required by the plan. As

one court held, "[s]uch a gross understatement of fees can have a drastic impact on the confirmation of debtors' plans, and this Court will not tolerate this type of misrepresentation." *In re Jackson*, 2008 WL 2074156, at *2 (Bankr. D. Mont.), citing *In re Townsend,* 17 B.R. 141, 143–44 (Bankr. D. Mont. 1998).

Here, the Court has the authority and discretion to disallow all fees over $3,000. In the alternative, the Court could hold Counsel to its $6,000 estimate as a sanction for knowingly or negligently underestimating its fees in the amended plan.

In the Court's view, either sanction would be excessive. Instead, the Court will allow Counsel all reasonable fees for necessary work. However, the Court may sanction Counsel in future cases if such significant fee disclosure problems persist.

## Conclusion

Although this straightforward case appears to be on track for a discharge, the attorney fees charged to obtain the result are too high. By a separate order, the Court will approve $74 in fees for the second fee application, $60 in costs, and applicable gross receipts tax. The Court also will order that Counsel correct the Disclosure and all of its erroneous Bankruptcy Rule 2016 disclosures in other pending chapter 13 cases. Further, if the estimated fees in unconfirmed plans in other pending chapter 13 cases are significantly understated, Counsel should file an appropriate correcting disclosure in each case. Fees and costs incurred for this corrective work should not be billed to the client and will not be allowed.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 19, 2024
Copies to: counsel of record